ALAN LEVIN FOUNDATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44691. Filed April 15, 1955.

*John Allen King, Jr., Esq.*, for the petitioner.
*John J. Hopkins, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies as follows:

| Fiscal year ended February 28 | Income tax | Declared value excess-profits tax | Excess profits tax |
|---|---|---|---|
| 1945 | $9,376.54 | $15,618.80 | $62,201.02 |
| 1946 | 4,430.84 | 7,231.49 | 27,291.10 |

The main issue is whether the petitioner was exempt from tax during the years here in question under section 101 (6). The petitioner raises alternative issues if that one is decided against it. The facts have been submitted by a stipulation of facts which is adopted as the findings of facts.

The petitioner filed returns for its fiscal years ended on February 28, 1945 and 1946, with the collector of internal revenue for the fifth district of New Jersey.

The board of directors of American Distilling Company, hereinafter called American, producers of whiskey, adopted a resolution in November 1943 extending to common stockholders of record as of a date to be fixed, the privilege of purchasing whiskey from it at cost to American. It created a trust to take complete charge of the disposi-

tion of the whiskey for the benefit of the stockholders. The holders of common stock of American were given the right to purchase 16 cases of one type of whiskey for each share of stock owned by them during the period from December 24, 1943, to February 29, 1944, later extended to May 20, 1944. This option will be referred to as "special privilege." The holders of common stock of American of record at the close of business on February 29, 1944, were granted the right to buy one case of rye and one case of bourbon whiskey during the 20-day period ending March 20, 1944, later extended to May 20, 1944. This option will be referred to as "special prerogative." A stockholder exercising his purchase rights was required to send his stock certificate to the transfer agent, accompanied by a purchase order signed by the stockholder, and a certified check, or the equivalent, payable to the trustee to purchase the whiskey ordered, together with an additional amount to cover all Federal excise and rectification taxes and bottling charges. The stock certificate would then be stamped, to show that the option had been exercised, and returned to the stockholder.

Maurice Levin purchased 900 shares of common stock of American, his wife purchased 200 shares, and his sister, using funds furnished by Maurice, purchased 500 shares, all prior to February 9, 1944. Maurice sent out circulars in January 1944 offering 16,000 cases of the special privilege whiskey for sale to retail liquor dealers in New Jersey.

The petitioner was incorporated on February 28, 1944, as a nonprofit corporation under the laws of New Jersey. It had no stockholders. It had 5 trustees, 1 of whom, Maurice Levin, was president and another of whom was secretary and treasurer. It had no other officers, trustees, or directors. Its purpose, as stated in its certificate of incorporation, is:

to receive, hold, care for, invest in and operate real and personal property and to use and distribute from time to time all the income and all principal, as well, which it shall receive, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, or by relieving their bodies from disease, suffering or constraint, or by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works; or by otherwise lessening the burdens of government.

No part of its net earnings or principal could inure to the benefit of any private shareholder or individual, and no part of its activities or those of any recipient of its funds could be to carry on propaganda or otherwise attempt to influence legislation.

Maurice, serving without compensation, performed substantially all of the work of carrying on the operations of the petitioner during the years here involved, with the exception of the costs and expenses incurred in connection with the purchase and sale of the whiskey.

The other trustees of the petitioner served without compensation also and none of them ever made any commercial purchases or sales of whiskey at any time material hereto, except on behalf of the petitioner.

The petitioner on the date it was incorporated purchased the 1,600 shares of American common stock from Maurice, his wife, and his sister, and gave in payment its non-interest-bearing notes in the total amount of $176,000 a price equivalent to that at which the stock was then being traded on the open market.

The following table shows purchases and sales of American stock by the petitioner:

| 1944 | Purchases | | Sales | |
|---|---|---|---|---|
| | Shares | Price | Shares | Price |
| February 28 | 1600 | $176,000.00 | 300 | $34,605.00 |
| March 16 | 500 | 57,675.00 | | |
| April 3 | 300 | 31,680.00 | | |
| April 4 | 100 | 10,635.00 | | |
| April 5 | 25 | 2,633.75 | | |
| April 12 | 25 | 2,633.75 | | |
| December 18 | | | 2250 | 74,749.31 |

The petitioner did not exercise any option to purchase on the 300 shares which it sold on February 28, 1944, immediately after it bought them but it exercised all purchase privileges with respect to the other shares.

Maurice also transferred to the petitioner all orders for whiskey which he had received together with the advance purchase price payments thereon.

The petitioner applied for and was issued a wholesaler's basic permit under the Federal Alcohol Administration Act, and it purchased a Federal wholesale liquor dealer's stamp. It never received a class B wholesale liquor license under the laws of New Jersey but made all but one of its liquor sales to retail liquor dealers by special permits pursuant to a procedure provided by the New Jersey Alcoholic Beverage Commission to take care of sales by American stockholders. The exception was the sale of 1,300 cases of special privilege whiskey sold to one New York State retailer under a permit issued pursuant to the New York State Alcoholic Beverage Control Law.

The sales were made to about 160 retail liquor dealers. The purchase orders with respect to substantially all of the sales, together with advance payment of the purchase price in full, had been received by the end of April 1944 but completion of the sales was delayed until the trustee could deliver the whiskey.

The petitioner, upon receiving orders for whiskey, notified the trustee appointed by American and, as circumstances permitted, the trustee shipped the whiskey directly to the purchasers.

18

The petitioner sold and delivered 29,584 cases of whiskey during its fiscal year ended February 28, 1945, the results of which were as follows:

Sales:
   Sales of whiskey_____ $958, 287. 96
Cost of sales:
   Federal excise taxes_____ $564, 680. 69
   New Jersey beverage tax_____ 69, 801. 60
   New York beverage tax_____ 4, 680. 00
   Bottling expense_____ 44, 376. 00
   Purchase cost of whiskey_____ 47, 465. 26

Total cost of goods sold_____ 731, 003. 55

Gross profit on sales_____ 227, 284. 41
Other expenses:
   New York State permit_____ 820. 00
   Freight in_____ 4, 224. 06
   Freight allowed to purchasers_____ 9, 840. 00
   Legal fees_____ 1, 000. 00
   Miscellaneous selling expenses_____ 2, 234. 11
                                              18, 118. 17

Net profit_____ $209, 166. 24

The petitioner sold and delivered 9,616 cases of whiskey during its fiscal year ended February 28, 1946, the results of which were as follows:

Sales:
   Sales of whiskey_____ $294, 536. 36
Cost of sales:
   Federal excise taxes_____ $174, 175. 81
   New Jersey beverage tax_____ 23, 097. 60
   Bottling expense_____ 14, 424. 00
   Cost of whiskey_____ 13, 065. 74

Total cost of goods sold_____ 224, 763. 15

Gross profit on sales_____ 69, 773. 21
Other expenses:
   Freight in_____ 806. 72
   Freight allowed to purchasers_____ 4, 214. 40

Total other expenses_____ 5, 021. 12

Net profit_____ $64, 752. 09

The demand for whiskey was greater than the supply during the periods here involved. Both retailers and wholesalers were unable to purchase all of the whiskey needed by them even at ceiling prices.

The petitioner purchased bonds, other than Government bonds, on October 26, 1944, for a little over $63,000, and sold them early in 1945 at a profit of about $17,000. It purchased United States Treasury bonds in December 1944 for a total of $560,000, using $475,000 of borrowed funds in addition to its own funds. It sold about $62,000 of those bonds in May 1945 at a profit of $1,980 and sold the remainder on September 1, 1945, at a profit of $14,375. It purchased Treasury bonds on August 1, 1945, in the total amount of $1,524,375, using $1,-425,000 of borrowed funds in addition to its own funds. It purchased Treasury bonds on September 4, 1945, for $500,000, using $475,000 of borrowed funds in addition to its own funds. The petitioner held for the balance of the year the bonds purchased in 1945.

The following table shows income and charges of the petitioner for the years here involved.

| | | Fiscal year ended February 28 | | |
|---|---|---|---|---|
| Income: | | 1945 | | 1946 |
| Whiskey transaction: | | | | |
| Proceeds of sale | $958,287.96 | | $294,536.36 | |
| Cost of whiskey | 749,121.72 | | 229,784.27 | |
| | | $209,166.24 | | $64,752.09 |
| Gain on sale of bonds | | 1,525.34 | | 31,779.50 |
| Interest on U. S. Treasury bonds | | 2,332.22 | | 37,345.18 |
| Contributions received | | 55.00 | | |
| Total income | | 213,078.80 | | 133,876.77 |
| Charges: | | | | |
| Loss on sale of American Distilling stock | 171,903.19 | | | |
| Loss on sale of other securities | 300.60 | | | |
| Interest expense | 908.65 | | 14,227.96 | |
| Telephone | 327.11 | | 7.05 | |
| Legal fees | | | 650.45 | |
| Miscellaneous expense | 10.20 | | | |
| Federal stamp tax | 165.00 | | | |
| Total charges | | 173,614.75 | | 14,885.46 |
| Net income before contributions | | 39,464.05 | | 118,991.31 |
| Contributions to charitable organizations: | | | | |
| Hebrew Sheltering Home | | None | 500.00 | |
| Women's Counsel of Navy League | | | 100.00 | |
| League for Friendly Service | | | 600.00 | |
| Home for Chronic Sick | | | 100.00 | |
| Temple B'nai Abraham | | | 6,000.00 | |
| United Jewish Appeal | | | 12,500.00 | |
| | | | | 19,800.00 |
| Net income after contributions | | $39,464.05 | | $99,191.31 |

The Commissioner's contention as stated repeatedly in his brief is that the petitioner is not exempt under section 101 (6) because it "was organized and operated for the primary purpose of carrying on a wholesale liquor business for profit." He relies upon the opinions of this court in *C. F. Mueller Co.*, 14 T. C. 922, revd. 190 F. 2d 120; *Joseph B. Eastman Corporation*, 16 T. C. 1502; *Donor Realty Corporation*, 17 T. C. 899; and *John Danz*, 18 T. C. 454. He also cites

*United States* v. *Community Services, Inc.,* 189 F. 2d 421, certiorari denied 342 U. S. 932, and *Ralph H. Eaton Foundation* v. *Commissioner,* (C. A. 9) 219 F. 2d 527. The petitioner contends that it is exempt because the charitable destination of its income is the controlling factor.

The primary purpose behind the organization of the petitioner was the establishment of a charitable foundation which could use its funds for charitable purposes. The incorporators took advantage of what appears to have been a unique situation in order to provide the initial funds for the charitable foundation. The petitioner was to continue as a charitable foundation, and it has continued as a charitable foundation. The Commissioner, in effect, concedes that it meets all of the requirements of section 101 (6) unless its activities in purchasing and selling the liquor, as the result of its ownership of American stock, stand in the way.

It is true that the incorporators of the petitioner fully intended to have it acquire American stock, purchase the whiskey which it would be allowed to purchase as a holder of the stock, sell the whiskey through the offices of the trust established by American for that purpose, and profit from the sale of the whiskey. However, the stipulated facts show that this petitioner was not organized and operated primarily for the purpose of carrying on a wholesale liquor business for profit. Its activities in buying and selling the liquor were limited, temporary, and incidental to its ownership of the stock. The petitioner took advantage of the opportunity, first to buy and then to sell whiskey at a profit, which American gave its stockholders, but, like many other stockholders of American, the petitioner had no regularly established place of business, did not purchase whiskey in the market for resale, did not handle the whiskey, and was not engaged in the operation for profit of a continuing business. It solicited sufficient sales to dispose of the liquor to which it was entitled as a stockholder, and the activity ended there. The incorporators and trustees of the petitioner had no intention that it should engage in the wholesale liquor business in the ordinary meaning of those words. There is no more reason to deny the petitioner tax exemption under section 101 (6) than there would be to take the exempt status away from a similar foundation which had American stock in its portfolio at the time American first decided to sell whiskey at cost to its stockholders and which purchased and sold its quota of the whiskey at a profit.

The facts distinguish this case from those cited by the Commissioner, and on the other hand it is not necessary to decide, as the petitioner urges, that the ultimate destination of the earnings of the

petitioner is controlling. The petitioner was a foundation organized and operated exclusively for charitable purposes within the meaning of section 101 (6). Alternative contentions of the petitioner need not be considered.

*Decision will be entered for the petitioner.*