A. SHIFFMAN AND LUCILLE S. SHIFFMAN, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE SHIFFMAN FOUNDATION, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65686, 71524. Filed August 17, 1959.

*Milton J. Miller, Esq.*, for the petitioners.

*Robert B. Pierce, Esq.*, and *John J. Yurow, Esq.*, for the respondent.

BRUCE, *Judge*: These consolidated proceedings involve deficiencies in income tax for the taxable periods set forth below:

| Docket No. | Date | Petitioner | Deficiency |
|---|---|---|---|
| 65686 | Dec. 31, 1952 | A. Shiffman and Lucille S. Shiffman | $9,134.54 |
| | Dec. 31, 1953 | A. Shiffman and Lucille S. Shiffman | 8,337.96 |
| | Sept. 30, 1952 | The Shiffman Foundation | 195,728.31 |
| 71524 | Sept. 30, 1953 | The Shiffman Foundation | 52,957.49 |
| | Sept. 30, 1954 | The Shiffman Foundation | 135,234.74 |
| | Sept. 30, 1955 | The Shiffman Foundation | 92,277.83 |

The issues for decision are: (1) Whether the Shiffman Foundation was exempt from income tax during the taxable periods in issue under sections 101(6), I.R.C. 1939, and 501(c)(3), I.R.C. 1954; and (2) if so, whether such exemption should be denied under the prohibitions of sections 3814, I.R.C. 1939, and 504, I.R.C. 1954, against the accumulation of income which is unreasonable and substantially for nonexempt purposes; and (3) whether contributions made by A. Shiffman to the Shiffman Foundation were deductible under section 23(o), I.R.C. 1939.

FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners A. Shiffman and Lucille S. Shiffman are husband and wife. During the years 1952 and 1953 they resided in Detroit, Mich-

igan, and filed their joint Federal income tax returns with the district director of internal revenue, Detroit, Michigan. The wife has been joined in this proceeding solely by reason of her having been a party to said joint returns.

Petitioner the Shiffman Foundation (hereinafter referred to as the Foundation, was formed by A. Shiffman and incorporated on July 9, 1948, under the laws of Michigan. After the close of its first full year of operation, ended September 30, 1952, the Foundation filed an exemption application and an exempt organization return with the Commissioner of Internal Revenue. The application was denied on June 20, 1953. Following the Commissioner's final denial of exemption on January 30, 1956, the Foundation was requested to file income tax returns. On August 1, 1956, the Foundation filed its corporation income tax returns for the years ended September 30, 1952, 1953, 1954, and 1955, with the district director of internal revenue, Detroit, Michigan. These returns were filed under protest. They disclosed net income, but claimed that no tax was due thereon.

The stated purposes of the Foundation, as set forth in the articles of incorporation, as amended, are:

### ARTICLE II

To promote the health, welfare, happiness, education and development of men, women and children, particularly the sick, aged, young, erring, poor, crippled, helpless, handicapped, unfortunate and underprivileged, regardless of race, color or creed, and for charitable, educational and benevolent activities, agencies and institutions; and, solely and exclusively for the foregoing purposes to receive, hold and administer any and all property, real, personal, or mixed, invest or reinvest the same, including the right to sell, convey, mortgage, or pledge the same, borrow money, and to carry on any and all activities incident thereto; and to accumulate principal or income for the purpose of erecting buildings or such other extensive programs as shall require accumulations incident to the accomplishment of the foregoing purposes; and to distribute and to expend any and all assets whether income or principal, solely and exclusively for the aforesaid purposes. No part of the activities of this corporation shall be the carrying on of propaganda or otherwise attempting to influence legislation.

The articles of incorporation further provide for a self-perpetuating board of trustees consisting of 10 persons. Under the Foundation's bylaws 5 of the trustees must be related by blood or marriage to A. Shiffman and the remaining 5 must be unrelated. The bylaws also provide that A. Shiffman shall be president of the Foundation or, in his stead, someone related by blood or marriage. In the event of the dissolution of the Foundation the articles of incorporation provide that the board of trustees shall distribute all the assets to such persons or institutions as comply with the charitable purposes set forth in Article II, *supra*.

All decisions as to the recipients of the Foundation's charitable contributions, except for amounts less than approximately $600, are made by all of the trustees of the Foundation. All checks, while they may be signed by either A. Shiffman or Norman J. Levey, his son-in-law, must be countersigned by either Jason L. Honigman or Milton J. Miller, persons unrelated to A. Shiffman.

The Foundation owned no assets other than its $1,000 of original capital until October 5, 1951, when it purchased from American Car and Foundry Company, a New Jersey corporation, a large parcel of real property for a purchase price of $1,150,000. This real property is located at Ferry and Russell Streets in the city of Detroit, Michigan, and consists of approximately 34 acres of land, on which are located factory and warehouse buildings containing approximately 750,000 square feet of space. It was a sound and nonspeculative investment.

To consummate the purchase, the Foundation borrowed $750,000 from the Northwestern Mutual Life Insurance Company and $250,000 from A. Shiffman. In addition, Murray Corporation of America, one of the tenants of the property, paid $154,000 as advance rental. The note payable to the Northwestern Mutual Life Insurance Company was payable in monthly installments over a 5-year period, bore interest at the rate of 5 per cent, and was secured by a first mortgage on the property. The note payable to A. Shiffman bore interest at the rate of 5 per cent, but was unsecured.

Immediately prior to the purchase of the property by the Shiffman Foundation the American Car and Foundry Company occupied approximately 23 per cent of the property. At the time of the purchase the Shiffman Foundation leased this portion of the premises back to the American Car and Foundry Company under a 5-year lease. The remainder of the property was leased to 11 other tenants under leases for periods of 5 years or less.

From 1923 to the date of purchase of the property A. Shiffman was the rental agent for American Car and Foundry Company for its Detroit property. He at first had received a commission of one-third of the rentals. The commission was later reduced to 25 per cent, and later to 10 per cent, which was the commission being received by him in 1951.

Upon purchase of the property, the Foundation entered into a management arrangement with the Russell Ferry Company, a partnership consisting of A. Shiffman and Norman J. Levey, his son-in-law, wherein the partnership received a fee of 5 per cent of the gross rentals for rendering all services necessary to the managing of the property. This fee is not in excess of the management fee customarily charged in the Detroit area.

The Foundation during the years in issue paid no salaries to any of its officers or trustees.

During the taxable years here involved the Foundation received income (exclusive of $154,000 received as advance rental from the Murray Corporation) in the following amounts:

| | Taxable year ended Sept. 30— | | | |
| --- | --- | --- | --- | --- |
| | 1952 | 1953 | 1954 | 1955 |
| Rents received | $379,406.26 | $384,410.09 | $386,918.54 | $381,401.68 |
| Expenses less reimbursements | 180,777.97 | 224,842.19 | 172,465.58 | 183,470.85 |
| Net rental income | 198,628.29 | 159,567.90 | 214,452.96 | 197,930.83 |
| Capital gain [1] | | | 129,483.07 | |
| Net income | 198,628.29 | 159,567.90 | 343,936.03 | 197,930.83 |

[1] Resulting from condemnation of a portion of the American Car and Foundry Company property so as to make way for the construction of a State highway.

The Foundation made payments on its indebtedness and charitable contributions in the following amounts:

| Year ended Sept. 30— | Net taxable income before deduction for charitable distributions | Charitable distributions | Net income after charitable distributions | Principal payments on indebtedness |
| --- | --- | --- | --- | --- |
| 1952 | $198,628.29 | $53,340.00 | $145,288.29 | $137,500.00 |
| 1953 | 159,567.90 | 52,296.75 | 107,271.15 | 205,000.00 |
| 1954 | 343,936.03 | 51,763.33 | 292,172.70 | 313,333.32 |
| 1955 | 197,930.83 | 57,660.00 | 140,270.83 | 262,500.00 |
| 1956 | 192,267.13 | 20,011.87 | 172,255.26 | 235,666.68 |
| 1957 | 209,697.61 | 221,358.33 | (11,660.72) | 0 |

Over the course of the 5 years following the purchase of the real property the Foundation completely retired its indebtedness and distributed $235,071.95 to exempt charitable organizations.

In addition to numerous miscellaneous charitable contributions, the Foundation pledged itself to two long-term projects: $250,000 to Brandeis University for a building project, and $500,000 to Sinai Hospital of Detroit.

After the acquisition of the rental property from the American Car and Foundry Company the Foundation acquired no other properties and made no other investments, other than the normal maintenance and improvement of the real estate in question. The trustees have no plans for the acquisition of any other investments and the present program of the Foundation is to disburse all of its net income, after expenses, to exempt organizations.

No part of the activities of the Foundation has consisted of carrying on propaganda, otherwise attempting to influence legislation, or participating or intervening in politcal campaigns on behalf of any candidate for public office. No part of the net earnings of the

Foundation inured to the benefit of a private shareholder or individual.

During the calendar years 1952 and 1953, Shiffman received 5 per cent interest from the Foundation on its debt to him of $250,000, which interest amounted to $12,500 each year. During the same 2 years Shiffman made contributions to the Foundation in the amounts of $13,500 and $12,500, respectively.

The Shiffman Foundation during the taxable years in issue was organized and operated exclusively for charitable purposes and did not unreasonably accumulate its income.

OPINION.

The respondent contends that the Shiffman Foundation is not exempt under sections 101(6), I.R.C. 1939,[1] and 501(c)(3), I.R.C. 1954, and, alternatively, even assuming that the Foundation is so exempt, the exemption must be denied under the prohibitions of sections 3814, I.R.C. 1939, and 504, I.R.C. 1954, against unreasonable accumulations of income and substantial use for nonexempt purposes. We disagree with both contentions.

The Shiffman Foundation was incorporated by A. Shiffman for charitable [2] purposes in 1948 with original capital of $1,000. In 1951 the Foundation purchased a large parcel of industrial real property, including factories and warehouses, for a purchase price of $1,150,000. To consummate this purchase the Foundation borrowed $1,000,000 and received $154,000 in advance rentals from one of its tenants. During the 5 years following the purchase the Foundation used a substantial portion of its net income from the rental property in complete retirement of its indebtedness. It also made substantial contributions to exempt charitable organizations. Thereafter, the Foundation contributed substantially all of its net income to exempt charitable organizations.

---

[1] Although the taxable years in issue involve both the 1939 and the 1954 Codes, the respective provisions are substantially the same. For the sake of convenience reference will be made only to the 1939 Code provisions.

SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

Except as provided in paragraph 12(B) and in supplement U, the following organizations shall be exempt from taxation under this chapter—

 * * * * * * *

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. For loss of exemption under certain circumstances, see sections 3813 and 3814;

[2] The term "charitable" is herein used in the generic sense as including the other more specific statutory terms such as "religious" and "educational."

Basically, the issue is whether such a debt-financed charitable foundation should be denied an exempt status under section 101(6) merely because it uses the major portion of its net income from rental property during the first 5 years of its financially active existence to retire the initial indebtedness incurred in purchasing such property.

In *Ohio Furnace Co.*, 25 T.C. 179, where the same issue on similar facts was raised by the Commissioner, we held in favor of the taxpayer foundation. In that case the Shattuck School, itself an exempt corporation, incorporated the nonprofit Shattuck-Ohio Foundation with original capital of $1,000. For $250,002 the Foundation purchased all the stock of the Furnace Company, a company which was engaged in the sale and distribution of heating and lighting equipment. The purchase price was evidenced by 18 promissory notes. The contract of purchase provided that all income received by the Foundation from the Furnace Company would be applied in payment of the notes except that the Foundation could withhold the sum of $5,000 per year for distribution to the school. For the first 3 years the Foundation paid over substantially all of its income in retirement of the notes and paid no sums whatsoever to the school or to any other charitable recipients.

The Commissioner contended that the Shattuck-Ohio Foundation was not exempt under section 101(6) because it used substantially all of its income to retire its notes. In holding that the Foundation was organized and operated exclusively for educational purposes within the meaning of section 101(6) we said, at pages 189–190:

The only reference in the statute bearing specifically upon the use of income is the prohibition that no part of the net earnings of the corporation, fund, or foundation may inure to the benefit of any private shareholder or individual. Conversely, it is reasonable to conclude, we think, that the requirements of 101(6) are satisfied if all of the income inures to the benefit of, or is in promotion of, an operation which is exclusively educational. Certainly there is no requirement that the income must either be used or distributed in the year realized for the described purpose, and we know of no case wherein a corporation, fund, or foundation was denied exempt status merely because it accumulated its income for distribution in a succeeding or later year. See *Alan Levin Foundation*, 24 T.C. 15. On the record here it may be said, we think, that there is no present intention that any of the income invested in the Furnace Company stock will ever be applied directly to school operations, but, on the other hand, it does appear that the fruits of the investment must be used exclusively for the prescribed purposes. In short, the facts show with certainty that all of the income of the Foundation, including that which is being invested in the Furnace Company stock must inure solely and exclusively to the benefit of the Shattuck School or some other Minnesota nonprofit organization organized and operated exclusively for educational purposes. Such being the case, it follows, we think, that the use of the income of the Foundation in the purchase of the Furnace Company stock was the use thereof solely and exclusively for the educational purposes for which the Foundation was organized. * * *

Similarly, in the instant case, although the exempt charitable recipients did not immediately receive the Foundation's entire net income in the form of current contributions, the record clearly indicates that "the fruits of the investment must be used exclusively for the prescribed purposes." These amounts which are used to retire the original indebtedness inure exclusively to the benefit of exempt charitable organizations and consequently such use of rental income is exclusively for charitable purposes. See also, *Estate of Ernest G. Howes*, 30 T.C. 909, affd. (C.A. 1) 267 F. 2d 382; *Knapp Brothers Shoe Mfg. Corp.* v. *United States*, (Ct. Cl. 1956) 142 F. Supp. 899.

The instant facts present even a stronger case for exemption under section 101(6) than the facts under *Ohio Furnace Co.* The record as a whole presents clearer cut and more convincing evidence of good faith. In *Ohio Furnace Co.* promissory notes were given to those persons who had sold the property to the Shattuck-Ohio Foundation and for the 3 taxable years in issue the Foundation used substantially all of its income in retirement of the notes and paid no sums whatsoever to exempt charitable organizations. In the instant case the purchase money was borrowed from parties other than those who sold the property to the Shiffman Foundation. That amount which was borrowed from A. Shiffman was unsecured, the interest rate was reasonable, and A. Shiffman for 2 years contributed to the Foundation amounts at least equal to the amounts received from it in the form of interest on the loan. Furthermore, during the taxable years in issue the Shiffman Foundation made substantial contributions to exempt charitable organizations. It is clear that in the present case Shiffman had no motive of personal profit but only the desire to endow a worthy charitable endeavor with his own name.

In *Ohio Furnace Co.* stock was purchased; in the instant case the asset purchased was real property. The holding of title to real property is closely analogous to the ownership of stock. Both are passive investments and are to be distinguished from active commercial competitive enterprises, such as were prohibited by *C. F. Mueller Co.*, 14 T.C. 922, revd. (C.A. 3) 190 F. 2d 120, and the penultimate clause of section 101 (later substantially reenacted as section 502 of the 1954 Code). See *Cummins-Collins Foundation*, 15 T.C. 613; *Samuel Friedland Foundation* v. *United States*, (D.N.J. 1956) 144 F. Supp. 74.

Consequently we hold that the Shiffman Foundation was organized and operated exclusively for charitable purposes within the meaning of section 101(6) during the taxable years in issue.

Respondent's alternative contention is that assuming the Foundation is exempt under section 101(6), such exemption must neverthe-

less be denied under section 3814, I.R.C. 1939,[3] because "the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year (1) are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for such organization's exemption under section 101(6); or (2) are used to a substantial degree for purposes or functions other than those constituting the basis for such organization's exemption under section 101(6)."

Respondent's contention, as we understand it, is essentially that the Foundation's use of income to repay its indebtedness constitutes an accumulation of income which was both unreasonable and for substantially nonexempt purposes.

Assuming, but not deciding, that the use of income, year by year, to pay an indebtedness incurred in acquiring income-producing property constitutes an accumulation of income, such accumulation here involved is neither unreasonable nor for substantially nonexempt purposes.

Since we held in deciding the primary issue that the Shiffman Foundation's use of income to repay its indebtedness was for exclusively charitable purposes, thereby qualifying it as a charitable organization under section 101(6), it seems clear that such use of income is neither "unreasonable in amount or duration" nor to any "substantial degree for purposes or functions other than those constituting the basis for such organization's exemption under section 101(6)" within the meaning of section 3814.

Accordingly we hold that the Shiffman Foundation's use of income from rental property to repay an indebtedness incurred in the acquisition of such property is not an accumulation of income which is either unreasonable or for substantially nonexempt purposes within the meaning of section 3814.

Finally, since we have found that the Shiffman Foundation is exempt under section 101(6), petitioners A. Shiffman and Lucille S.

---

[3] SEC. 3814. DENIAL OF EXEMPTION UNDER SECTION 101(6) IN THE CASE OF CERTAIN ORGANIZATIONS ACCUMULATING INCOME. [Substantially reenacted as section 504, I.R.C. 1954.]

In the case of any organization described in section 101(6) to which section 3813 is applicable, if the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year—

(1) are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for such organization's exemption under section 101(6); or

(2) are used to a substantial degree for purposes or functions other than those constituting the basis for such organization's exemption under section 101(6); or

(3) are invested in such a manner as to jeopardize the carrying out of the charitable, educational, or other purpose or function constituting the basis for such organization's exemption under section 101(6),

exemption under section 101(6) shall be denied for the taxable year.

Shiffman are entitled to charitable deductions under section 23(o) for contributions to the Foundation in the amounts of $13,500 and $12,500 during the calendar years 1952 and 1953, respectively.

*Decisions will be entered for the petitioners.*