COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Earl JOHNSON et al., Executors,
Respondents.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

HOWES LEATHER COMPANY, INC.,
Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Edith E. BOYER, Respondent.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Everett W. PERVERE, Respondent.

Nos. 5478–5481.

United States Court of Appeals
First Circuit.

June 5, 1959.

Grant W. Wiprud, Atty. Dept. of Jus-
tice, Washington, D. C., with whom
Charles K. Rice, Asst. Atty. Gen., and
Lee A. Jackson and Harry Baum, Attys.,
Dept. of Justice, Washington, D. C., were
on brief for petitioner.

Robert W. Meserve, Boston, Mass.,
with whom William Shelmerdine, Jr.,

and Nutter, McClennen & Fish, Boston, Mass., were on brief, for Earl Johnson and others, Executors, Edith E. Boyer and Everett W. Pervere, respondents.

Mason G. Kassel, New York City, with whom Harry J. Rudick, John K. Watson, Jr., and Lord, Day & Lord, New York City, were on brief, for Howes Leather Company, Inc., respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

The Commissioner of Internal Revenue has filed petitions for review of four decisions of the Tax Court of the United States entered on September 9, 1958 which decisions were based upon an opinion filed July 11, 1958, 30 T.C. 909. The four taxpayers concerned are the Estate of Ernest G. Howes, deceased, Edith E. Boyer, Everett W. Pervere and Howes Leather Company, Inc. The first three taxpayers were stockholders in certain affiliated leather tanning and cutting corporations and the deficiencies asserted by the Commissioner were for the year 1947. The fourth taxpayer is a Delaware corporation organized on July 15, 1947, which purchased the individual taxpayers' shares in the affiliated leather corporations, and against which the Commissioner asserted deficiencies for the corporation's fiscal years ending on June 30, 1948, 1949, 1950 and 1951.

A complete statement of the facts presented in these petitions is set forth in the Tax Court's opinion and our summary will contain only those findings of the Tax Court necessarily relevant to our decision.

In 1946 Ernest G. Howes and his two brothers, who together had created a group of affiliated companies which were a substantial factor in the production of sole leather in the United States, decided that as elderly men, with their considerable wealth mostly invested in these companies and in anticipation of estate taxes, that their family's interests would be best served by a diversification of investment. They decided that the best way

to accomplish this was to sell all their stock in the affiliated companies. In 1947 they came into contact with John Gerdes, general counsel of New York University who stated that he would be interested in purchasing the affiliated companies for the benefit of the University and that it was hoped the University would have the benefit of their earnings exempt from federal taxation. Gerdes further stated that the purchase price would have to be reasonable without regard to the charitable exemption, that payment therefor would have to extend over a number of years, that all the stock of the affiliated companies would have to be available for purchase, and that, since the purchaser was in no position to supply the required technical management, some management officials of the affiliated companies would have to sign long term contracts as employees. After considerable negotiation a purchase price of about $30,212,487.60 was agreed upon. This was to be payable by $6,042,497.52 in cash, $4,531,873.14 in a short term promissory note, and $19,-638,116.94 in a First Mortgage Twenty Year Bond of Howes Leather Company, Inc.

The Tax Court found, after a careful consideration of the record, including, among other facts, the net worth of the companies, their earnings record, (their profits in 1946 before renegotiation and taxes amounted to $11,584,457.91), their position in the industry (the Tax Court found that their product had a fine reputation and their organization was recognized throughout the industry as energetic and resourceful), and the provision for extended payment of the purchase price, that the purchase price was fair and just and was arrived at through arm's length dealings between the parties.

Howes Leather Company, Inc. which was formed by Gerdes and into which were merged the affiliated companies, had authorized capital stock of only $1,000 and its charter provided it was incorporated solely for the benefit of New York University, that in the event of

liquidation, its assets, after satisfaction of creditors, were to be distributed to New York University, and that while its charter could be amended by a majority of its stockholders and bondholders, any such amendment could not divert its income or property, after satisfaction of creditors, to any other than New York University. The charter further provided, as allowed by Delaware law, for three classes of directors; the Class A and one-third of the Class C directors were to be elected by the stockholders, the Class B and one-third of the Class C directors were to be elected by the bondholders, and the remaining one-third of the Class C directors were to be elected by a majority of the stockholders together with a majority of the bondholders. The shareholders were to elect the officers of the corporation.

The First Mortgage Twenty Year Bonds were to mature on August 12, 1967 and to bear an interest rate of 3½% per annum. They were prior to all other claims against the mortgaged property and with respect to other property, were on a parity with all other creditor claims. It was further provided that forty per cent of the consolidated net profits were to be annually applied to a sinking fund for their retirement.

On August 12, 1947 the taxpayers' share certificates were transferred to Howes Leather Company, Inc., the cash payment, short term promissory note and First Mortgage Twenty Year Bond were transferred to the Old Colony Trust Company of Boston for the benefit of the sellers and the other steps necessary for the execution of the transaction between the shareholders of the affiliated companies and Howes Leather Company, Inc. were carried out. Certain employees, including Ernest G. Howes, signed long term employment contracts with Howes Leather Company, Inc. at salaries stipulated to be reasonable.

The Tax Court further found that subsequent to 1948 advances in the field of substitutes for leather soles, such as Neolite, had a serious effect on the sole leather industry and the distributions to New York University by Howes Leather Company, Inc. decreased from $200,000 in 1948 to $50,000 in 1951 and that no distribution to the University has been made since that date. In order to counteract this to some extent Howes Leather Company, Inc. in 1949 and thereafter began to produce upper leather, after acquiring two upper leather plants at a cost of between two and three million dollars. Although no payments have been made to the sinking fund since 1951, the treasurer of Howes Leather Company, Inc. stated that the interest on the bonds had always been paid when due and that there had been no default under the bond indenture. The Tax Court also noted that a former shareholder had sold approximately $1,500,000 in face amount of the bonds at 30% of their face value on the open market in August 1952.

The Tax Court found the transaction between the shareholders of the affiliated companies and Howes Leather Company, Inc. was not a sham but rather a very real transaction which took place in the utmost good faith. It further found the taxpayers' characterization of the transaction as a purchase and sale was in accord with substantial economic reality and that the bonds issued to the sellers were true evidences of indebtedness and did not represent equity invested capital. In response to the Commissioner's alternative contention that this transaction resulted in a statutory reorganization under which the amounts received in cash by the individual taxpayers in 1947 represented a taxable distribution out of the accumulated earnings and profits of the affiliated companies, under Section 115 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115, the Tax Court found that there had not been the continuity of ownership interest following the events of 1947 necessary for the application of the reorganization provisions of the Internal Revenue Code of 1939, Section 112(b)(3), (c)(2) and (g), 26 U.S.C.A. § 112(b)(3), (c)(2), (g).

■ The Commissioner in these petitions for review does not strongly con-

tend that the Tax Court was clearly erroneous in holding that this transaction was *bona fide* and was not just a sham to be entirely ignored for tax purposes. In any event we will not reverse the Tax Court on these findings.

The Commissioner more strongly relies on his alternative argument that in substance and net effect, because of the continuity of the business enterprise and proprietary interest, the parties only accomplished a partially non-taxable reorganization. As his basis for the latter argument the Commissioner accepts the Tax Court's findings as to the evidentiary facts but urges that these facts require as a conclusion of law that the taxpayers accomplished a partially taxable corporate reorganization rather than a purchase and sale of corporate stock. While the Commissioner asserts that he relies on the total and cumulative import of all the facets of the transaction in support of his conclusion that the shareholders continued to be true proprietors of the corporate enterprise, the cornerstone of his case is the assumption that the approximately $19,600,000 in mortgage obligations really represented an equity interest rather than a security interest in the new corporation. The Tax Court, however, after stating that whether the bonds issued represented indebtedness or equity capital was a question of fact, found that the bonds were true evidences of indebtedness and the voting rights granted to the bondholders only served as additional security for the payment of the purchase price and not to reserve to the sellers a proprietary interest in the business. It is clear that if these bonds do not serve to furnish the taxpayers a proprietary stake in the enterprise, then there would not be a reorganization under the terms of Section 112 of the 1939 Code. LeTulle v. Scofield, 1940, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355.

The Commissioner contends that there was no infusion of new risk capital into this enterprise following the transfer by the taxpayers of their shares in the affiliated companies to Howes Leather Company, Inc. Even though this be so, this factor is of minor significance for often purchases are financed by mortgages taken back by the seller. In such an event a real risk is borne by the mortgagee but this does not cause an otherwise valid sale to become something less than that.

The Commissioner is forced to admit that upon the redemption of the bonds by Howes Leather Company, Inc. the bondholders would no longer have any interest in the corporate enterprise. The importance of this fact cannot be diminished merely because after the sale, the prosperity of the enterprise was adversely affected by competition from substitute products which competition had not been anticipated by either the sellers or purchaser. The mere fact that the security holders may in the future have to resume proprietorship of the enterprise does not nullify the fact that they had sold those proprietary interests. See Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 184, 62 S.Ct. 540, 86 L.Ed. 775. Of course, even though shareholders may claim they have sold their proprietary rights, if in fact their powers of control and rights to the corporate profits have not changed, that sale will not be recognized for tax purposes. See Kolkey v. C. I. R., 1956, 27 T.C. 37, affirmed 7 Cir., 1958, 254 F.2d 51. But the Tax Court clearly did not commit legal error in distinguishing the factual situation in the instant case from that presented in the Kolkey case and in holding here that there was no reorganization because of the lack of continuity of the proprietary interests of the shareholders. See for a similar result Truschel, 1957, 29 T.C. 433, 440 which concerned other taxpayers whose shares in certain of the affiliated companies were sold to Howes Leather Company, Inc.

The Commissioner's asserted deficiency against Howes Leather Company, Inc. is based on the premise that it had lost its exemption from taxation under Section 101(6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 101 (6), and Section 302 of the Revenue Act

**386**

of 1950, 64 Stat. 906, as amended by Section 601 of the Revenue Act of 1951, 65 Stat. 452, 26 U.S.C.A.Int.Rev.Acts, because part of its net earnings inured to the benefit of private shareholders in the form of payments of principal and interest to the holders of the Twenty Year Mortgage Bonds. However, in view of our affirmance of the Tax Court's decision that these bonds represented true evidences of indebtedness, it follows that the Tax Court was correct in concluding that any payments of interest or principal on these bonds were payments made to creditors rather than payments of net earnings to the proprietors of the enterprise. The decision of the Tax Court in holding the Howes Leather Company, Inc. exempt from taxation for its fiscal years ending June 30, 1948, 1949, 1950 and 1951 is therefore affirmed. See Knapp Brothers Shoe Mfg. Corp. v. United States, 1956, 135 Ct.Cl. 797, 142 F. Supp. 899.

Judgments will be entered affirming the decisions of the Tax Court.