HANCOCK ACADEMY OF SAVANNAH, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5431–77X.     Filed December 19, 1977.

*Alvin M. Hitt, Jr.*, for the petitioner.
*James J. McGovern*, for the respondent.

## OPINION

DAWSON, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3).[1] Petitioner challenges respondent's determina-

---

[1]Unless specified otherwise, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

tion and has invoked the jurisdiction of this Court for a declaratory judgment[2] pursuant to section 7428. The issue for our decision is whether petitioner served private interests in contravention of the requirements for exempt status under section 501(c)(3).

This case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure.[3] The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. The pertinent facts are summarized below.

Hancock Academy of Savannah, Inc. (petitioner) is a Georgia corporation with its registered office in Savannah, Ga. Petitioner filed its application for recognition of exemption under section 501(c)(3) with the District Director of Internal Revenue in Atlanta, Ga.

Petitioner is a recent spin off from a group of for-profit schools founded by Emmie Ruth Hancock (Mrs. Hancock). The original school, Hancock Day School, Inc., was founded in 1951 by Mrs. Hancock and continues in existence today. Mrs. Hancock is the president and a director of Hancock Day School, Inc. Her son, William L. Bell (Mr. Bell) is vice president and a director. Hilma S. Traver is secretary-treasurer and a director. Hancock Day School, Inc., is owned by Mrs. Hancock and Mr. Bell.

Initially, Hancock Day School, Inc., operated kindergarten through the seventh grade. Due to space limitations, however, a new corporation, Hancock Schools, Inc., was formed in 1972 to facilitate expansion. The officers and directors of Hancock Schools, Inc., are: Mrs. Hancock, president and a director; Mr. Bell, vice president and a director; and Alvin M. Hitt, Jr., secretary-treasurer and a director. Each of these individuals owns a one-third interest in Hancock Schools, Inc.

Upon its formation, Hancock Schools, Inc., purchased from

---

[2] The prerequisites for this declaratory judgment have been satisfied: petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

[3] For declaratory judgments not involving revocation, submission for disposition on the basis of the administrative record is in accordance with Rule 217(a), Tax Court Rules of Practice and Procedure, which reads in part as follows: "Only with permission of the Court, upon good cause shown, will any party be permitted to introduce before the Court any evidence other than that presented before the Internal Revenue Service and contained in the administrative record * * * "

Hancock Day Schools, Inc., the operations of grades four and up for an amount including $50,000 which was identified as payment for one-half of the goodwill of Hancock Day Schools, Inc. The $50,000 was payable on an installment basis over 10 years with $5,000 due annually beginning in 1982 and with 6-percent interest due on any unpaid balance. Under the terms of the sale, Hancock Day Schools, Inc., agreed to cease operating grades four and up.

Hancock Schools, Inc., moved to a new location, erected a larger building, took over the operation of grades four through seven, and adopted plans to add a new grade each year until grades four through twelve were offered. Hancock Day School, Inc., continued to operate in its original location, but handled only kindergarten through third grade.

Hancock Schools, Inc., adopted an interest-free loan program whereby, in addition to making tuition payments, parents were required to loan to Hancock Schools, Inc., without interest, $500 for the first child and $100 for each additional child in attendance. The loans were repayable by the school within 1 year after the parent's children were no longer in attendance.

Hancock Schools, Inc., operated as a school for 3 years. In 1975, however, its officers decided to form a nonprofit corporation to take over the school operations and to obtain tax-exempt status to encourage contributions which then would be tax deductible. Petitioner was formed for this purpose. Mr. Bell was named president and trustee for petitioner. Mr. Bell's spouse, Doris C. Bell, and Mrs. Hancock were named vice presidents and trustees. Six other trustees also were named: Dr. Harold Black, Mrs. Angela Deering, Rev. W.H. Ford, Mr. Walton Ruff, Mrs. Martha Stewart, and Mr. Abe Tenenbaum.

Hancock Schools, Inc., continued to own the land and buildings for the school operation and leased the property to petitioner under a lease with a term of 15 years. Petitioner was responsible for all taxes, maintenance, and utility expenses related to the school. Hancock Schools, Inc., was responsible for an annual insurance payment of approximately $500. The monthly lease payments of $2,000 bring a return of 8.4 percent to Hancock Schools, Inc., on the land and improvements purchased at an aggregate cost of $280,159. This rate of return is less than that generally received on similar real estate investments in the area.

Petitioner purchased outright from Hancock Schools, Inc., all of the personal property used in the school operation and assumed all liabilities related thereto. Petitioner also assumed the $50,000 debt owed by Hancock Schools, Inc., to Hancock Day Schools, Inc., for the acquisition of goodwill.

Petitioner agreed to continue the parent loan program for the benefit of Hancock Schools, Inc. The loan funds were to be utilized for building and ground improvements as directed by petitioner. Hancock Schools, Inc., remained responsible for repaying the loans as they came due.

For the year ended June 30, 1975, Hancock Schools, Inc., had total receipts of $205,492 and total expenses of $201,524, for a net profit of $3,968. Petitioner's budget for 1975–76 called for income of $240,005 and expenses of $244,404 for a net loss of $4,399. The projection for 1976–77 is for expenses to equal income of $295,000.

Sections 501(a) and 501(c)(3) provide[4] an exemption from Federal income tax for an organization devoted to education if three prerequisites are satisfied: (1) The organization must be organized and operated exclusively for education alone or in conjunction with other exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) it must not devote a substantial part of its activities to political or lobbying activity.

Respondent determined that the first two of these prerequisites were each violated by two circumstances in petitioner's history. First, respondent asserts, petitioner assumed a liability for goodwill in an excessive amount. Second, petitioner required

---

[4]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a)EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\*      \*      \*      \*      \*      \*      \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*      \*      \*      \*      \*      \*      \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

parents of its students to make interest-free loans to its for-profit predecessor, Hancock Schools, Inc. These two incidents, respondent argues, mean that petitioner was not organized and operated exclusively for educational purposes and that part of petitioner's net earnings will inure to the benefit of private individuals.

The burden of proof is on petitioner to overcome the grounds set forth in respondent's notice of determination. Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. Moreover, the requirements for exemption under section 501(c)(3) are stated in the conjunctive; failure to satisfy any one of them will prevent exemption. *Stevens Bros. Foundation, Inc. v. Commissioner*, 39 T.C. 93, 110, affd. in part and revd. in part 324 F.2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964). To prevail here, therefore, petitioner must prove that neither of the circumstances identified by respondent violates either of the relevant requirements of section 501(c)(3). Petitioner failed to meet this burden.

The first ground for disqualification is petitioner's assumption of the liability for goodwill. Incurring debt to purchase an asset at fair market value and subsequently retiring that debt with earnings is not a violation of the exempt purposes requirement or the private inurement of net earnings proscription of section 501(c)(3). See *Shiffman v. Commissioner*, 32 T.C. 1073, 1079–1080 (1959); *Estate of Howes v. Commissioner*, 30 T.C. 909, 920–926 (1958), affd. sub nom. *Commissioner v. Johnson*, 267 F.2d 382 (1st Cir. 1959); *Ohio Furnace Co. v. Commissioner*, 25 T.C. 179, 188–190 (1955), appeal dismissed (6th Cir. 1956). If the purchase price is in excess of the fair market value, however, violation of the requirements of section 501(c)(3) results. Cf. *Kolkey v. Commissioner*, 27 T.C. 37, 61–63 (1956), affd. 254 F.2d 51 (7th Cir. 1958).

In the instant case there was a majority of identity among the officers of the three corporations involved in the transactions. Most of these officers were in a position to personally gain from the transaction since they were the owners of the for-profit corporations. Moreover, there is no indication in the record that any disinterested party seeking to establish a private school in the area would be a willing buyer of the goodwill in question for $50,000. Thus, although the officers may have acted in good faith, an independent analysis of objective factors is appropriate

under these circumstances to determine if the liability assumed was excessive.[5]

Respondent's determination that the amount of liability assumed for goodwill is excessive, is based on the fact that a net loss was projected for petitioner's first 2 years of operation. From this respondent concludes that the value of the goodwill is nominal, the liability assumed was excessive and the transaction benefited private individuals. The statistics used by respondent to compute the goodwill value span only a short period of time, but they are the best figures available in the record. The record contains no evidence suggesting more appropriate figures on which to base the capitalization of earnings approach for determining the value of goodwill. Moreover, rather than attacking the premise of no excess earnings potential, petitioner instead advances two alternative arguments.

First, petitioner argues that the capitalization of earnings approach is inappropriate in valuing the good name of Hancock and the importance of that name to the financial viability of petitioner. The difficulty with this is dual. As respondent properly points out, this approach is premised on facts not contained in the administrative record. Petitioner's allegations on brief that many new private schools in the Savannah area have folded because they lacked an established name in the community may well be true, but these facts were not presented to respondent to aid in his administrative determination and are not properly before us now.

Even if these facts were before us, we are not prepared to accept that $50,000 was a reasonable amount for the Hancock name. Reputation in the community is an important asset, perhaps priceless, but if it becomes a commodity sold as part of a business, it must be valued as such. In the absence of better evidence, fair market value of goodwill is determined by capitalizing the income from a business and subtracting from

---

[5]On brief and in its petition, petitioner seeks to bolster its view of the transactions by alleging subsequent ratification by petitioner's full board of trustees. There is no evidence in the record of this ratification or of the surrounding circumstances. The coincidence of officers who completed the transaction remains and an independent evaluation still would be appropriate.

To conclude otherwise would enable the owners of any private school to create a nonprofit corporation with themselves as officers and then to cause the nonprofit corporation to purchase the school at a price including their self-interested, subjective valuation of goodwill. Not requiring objective evidence that the value assigned to goodwill is fair would render ineffectual the requirements for tax-exempt status.

the resulting figure the fair market value of the other assets. *Staab v. Commissioner*, 20 T.C. 834, 840 (1953). Since losses were projected, respondent properly valued the goodwill under the capitalization method as nominal.[6]

Petitioner's alternative argument for goodwill valuation is that the amount for goodwill may more properly be labeled as covenant not to compete for which $50,000 was reasonable compensation to Hancock Day Schools, Inc., and Hancock Schools, Inc., for giving up the right to teach grades four and up. We find this argument unpersuasive. In fact, the sales agreement specifically assigned the $50,000 price to goodwill without allocating any portion of the price to the covenant.

Futhermore, even if we were to accept petitioner's contention that the $50,000 was for the covenant not to compete, this would not alter our holding. A covenant not to compete is a natural concomitant of goodwill. See *Watson v. Commissioner*, 35 T.C. 203, 213 (1960), appeal dismissed (4th Cir. 1961). Without the covenant, petitioner's purchase of goodwill here would have been ineffectual. Understandably the covenant not to compete was an integral component of the sale of the goodwill purchased by petitioner. It matters little here whether the payment was labeled as goodwill or as a covenant not to compete. In either event, on this record the net effect of assuming the $50,000 liability was to benefit individual interests.

Such private benefit violates both the direct proscription against net earnings inuring to private individuals and the requirement that petitioner be organized and operated exclusively for exempt purposes. *Texas Trade School v. Commissioner*, 30 T.C. 642, 646–647 (1958), affd. 272 F.2d 168 (5th Cir. 1959); sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. We therefore hold that petitioner's assumption of the liability for goodwill violated the requirements for exemption under section 501(c)(3).

The second ground for disqualification under section 501(c)(3)

---

[6]The entire approach of having a nonprofit corporation pay an amount for goodwill is troublesome. By definition a nonprofit educational institution does not operate its school to make a profit. For a nonprofit school to pay for goodwill, generally a measure of the profit advantage in an established business, is anomalous. Although payment for goodwill may be appropriate for a private organization designed to make money to support unrelated exempt purposes or to take over a formerly highly profitable business to be operated thereafter entirely for exempt purposes, this Court is hard pressed to conceive of a situation where payment for goodwill to take over an unprofitable business would be appropriate. To the contrary, such a payment under usual circumstances necessarily would cause the earnings of the corporation to inure to private individuals.

is petitioner's agreement to require parents of its students to make interest-free loans to Hancock Schools, Inc. Respondent contends that these loans benefited private interests. On brief[7] petitioner argues that the loan requirement was part of the remuneration under the lease agreement designed to provide Hancock Schools, Inc., with a fair rate of return on its property. There is insufficient evidence in the record, however, to support petitioner's argument. The record reveals that the rate of return on the leased property was less than that generally received on similar real property, but this return was calculated by respondent without considering the value of the interest-free loans.[8] In fact, the record is devoid of evidence as to the value of the interest-free loans or their effect on the rate of return on the school realty held by Hancock Schools, Inc., if considered as part of the lease payment. The aggregate return may have resulted in an effective rental return to Hancock Schools, Inc., which was not excessive, but without supporting evidence we are unable to reach that conclusion.[9] Consequently, we must determine the effect of the loan requirement as if it were an isolated event.

---

[7]Petitioner had a previous opportunity to challenge respondent's determination regarding this issue, but did not address the issue when administratively appealing respondent's initial determination of nonqualification.

[8]Respondent commissioned an appraisal which reported a rate of return of 8.4 percent. This figure was computed by dividing the cost of the realty including improvements ($280,159) by the net lease proceeds ($23,500). Respondent's failure to include the value of the interest-free loans is understandable since the lease and the loan requirement were incorporated as separate clauses in the same document which included all provisions for the takeover of school operations by petitioner.

[9]The record contains no evidence on what the interest rates to Hancock Schools, Inc., would have been if it had borrowed the funds on the open market, on what the range of fair market rental return is for similar property (on brief, petitioner alleges it to be 12 to 15 percent) or on what method of calculating the rate of return is preferable. Petitioner argues generally that the loans should be ignored since, if Hancock Schools, Inc., had borrowed the funds on the open market, lease payments and tuition would have been increased a corresponding amount, and the deduction for interest would have offset the increased income. Although this argument appears to be supported by appealingly simple logic, the argument is based on speculation, is unresponsive to the method used by respondent to calculate the rate of return here, and is an insufficient basis to permit a conclusion that the lease payments including the loan value were not excessive.

Respondent's method of calculating rate of return was based on the gross cost of the realty including improvements, not on net investment excluding loans. If considered as part of the lease, under respondent's method the value of the interest-free loans would be considered an incremental return to Hancock Schools, Inc., not as an amount which would be offset by an interest expense if borrowed on the open market, and which therefore should be ignored. Hancock Schools, Inc., had an actual rate of return on net investment excluding loans which undoubtedly varied from that calculated by respondent. Since there is no evidence on the actual capital structure of Hancock Schools, Inc., on availability, and cost of outside loans or on its net return on equity investment, there is no way to evaluate petitioner's contentions.

After considering all the facts and circumstances, we conclude that the loan requirement did contravene the requirements of section 501(c)(3). The use of the money without interest was a definite benefit to Hancock Schools, Inc. Although the funds were to be used as directed by petitioner to improve the school grounds,[10] benefits did inure to private individuals. The lease was for a term of 15 years, at which time petitioner lost any contractual rights to the property and whatever improvements made, including those financed by the interest-free loans, would revert to the complete control of Hancock Schools, Inc. Moreover, without the interest-free loans Hancock Schools, Inc., might have found it necessary to borrow money elsewhere or to make additional equity contributions to finance capital improvements to the realty. We therefore hold that the interest-free loan provisions benefited Hancock Schools, Inc., and thereby violated the requirement that petitioner be organized and operated exclusively for exempt purposes.[11]

Accordingly, since petitioner failed to meet the requirements of section 501(c)(3), we hold that it did not qualify for tax exempt status.

*An appropriate decision will be entered.*

---

We must deal with the facts as they appear in the record. The 8.4-percent return was based on gross cost of the realty and the direct lease payments less the cost of insurance. If viewed as a part of the lease, the interest-free loans had a value to Hancock Schools, Inc., which increased its rate of return. Since there is no evidence that the resulting rate was not excessive, we reject petitioner's argument.

We note that the inadequacy of the record may be attributable in part to the fact that it was developed at a time before the declaratory judgment was available as a method to review administrative determinations of nonqualification.

[10]Respondent argues that this provision in the lease was nullified by another clause which prevented improvements to the realty without prior approval by Hancock Schools, Inc. We find the terms ambiguous and do not rely on respondent's argument since we find private benefit regardless.

[11]It is not clear to us that this benefit necessarily also violated the requirement that no part of petitioner's net earnings may inure to the benefit of any private shareholder. Due to the poorly developed record, the view we have taken of the loan requirement is admittedly artificial. To extend the analysis to the question of inurement of net earnings would be a meaningless exercise. In any event, we find it unnecessary to resolve this issue since it would not alter the holding in this case.