SAVE THE FREE ENTERPRISE SYSTEM, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Save the Free Enterprise System, Inc. v. Commissioner
Docket No. 13366-79X.
United States Tax Court
T.C. Memo 1981-388; 1981 Tax Ct. Memo LEXIS 352; 42 T.C.M. (CCH) 515; T.C.M. (RIA) 81388; July 29, 1981. John F. Carter (an officer), for the petitioner. Robert E. Langley and Barry A. Furman, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined that petitioner is not exempt from Federal income tax under section 501(c)(3). [1] Petitioner, challenging respondent's adverse determination, has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. [2]
The issue for our determination *354 is whether petitioner is operated exclusively for one or more exempt purposes within the meaning of section 501(c)(3). The case was submitted for decision on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference. Petitioner, incorporated on October 28, 1977, is a Massachusetts nonprofit corporation with its principal place of business at Woodstock, Virginia at the time of the filing of its petitioner herein. On August 7, 1978, petitioner filed its application for recognition of exemption with the District Director, Internal Revenue Service, Boston, Massachusetts, who, on or about September 11, 1978, referred petitioner's application to the National Office. On February 22, 1979, the National Office issued petitioner a proposed denial of recognition of tax exemption which petitioner timely protested. On June 22, 1979, respondent issued a final ruling denying petitioner's application. According to petitioner's articles of organization, the purposes for which petitioner was formed are: A. To maintain *355 and establish a non-profit corporation committed to preserving the free enterprise system. B. To seek out and advance all ways of increasing public participation in the free enterprise system. C. The purpose of this corporation shall be to act as co-ordinating, educational service and producing organization to promote and encourage the knowledge, appreciation and practice of the free enterprise system in these United States through the presentation of theatre productions, films, video, lectures and forums. D. To gather, receive and give out such information as may be helpful to the General public, and any seeking to participate in the free enterprise system. E. To have and excercise [sic] all the rights, powers and priveleges [sic] which may now or hereafter be conferred by the laws of the Commonwealth of Massachusetts upon corporations formed under Chapter 180 of the Massachusetts General Laws, including any and all powers specified or referred to in Section 6 of said chapter 180, expressly including Chapter 156B, Sections 9 (other than Subsection 9(M)), and (9A), but subject to the limitations set forth in Item 4 of these articles. [3]
*356 Petitioner's bylaws limit its activities to the following: (a) Articles of Organization (b) To inform the public, who have a right to know, that "as a result of placing too much unchecked power into the hands of regulators, the flames of corruption are burning freely throughout the free enterprise system." (c) To speak out against these unchecked powers further alerting the Public to the seriousness of the Small Businessman's plight and overall effect that monopolies and shared monopolies have on the marketplace. (d) To eliminate Regulatory Takeovers, (frauds perpetrated by lawyers on small companies whose presence represents a competitive threat to existing powers), as well as fear of reprisals for those who wish to expose corruption. (e) To oppose governmental oppression as a firm reminder to all that we cherish and place the dignity and rights of the individual above all else and will not tolerate the power to persecute from any quarter. (f) To make the Organized Bar more responsive to the needs of an unprotected public. To establish scholarship aid for law school applicants who are deeply committed to preserving the American Dream. (g) To research and develop *357 new techniques designed to accelerate would be consumer oriented entrepreneurs and other less privileged, into the marketplace, to pursue the American Dream through Open Competition, (more companies-more jobs-more goods fairly priced.) To reduce inequality of opportunity so as to provide a more equitable distribution of income and wealth in these United States. (h) To solicit funds from public and private sources to be used for the foregoing purposes. Other than research and development, which it has failed to describe, petitioner has not begun any of the activities enumerated in its bylaws. Petitioner has not developed the techniques designed to accelerate consumer oriented entrepreneurs and others into the marketplace. Petitioner is currently studying plans for a central office in Washington, D.C. Proposals for productions, films, video, lectures and forums will be dictated by public acceptance, funding, and bylaws. Petitioner is developing a newsletter and has printed one issue entitled "SAVE," authored and copyrighted by Carter, whom SAVE describes as "the founder and majority stockholder of a unique Investment and Insurance concept orchestrated through seven corporations *358 styled the Brokers Diversified Group." Much of the newsletter is devoted to Carter's lawsuit against the American Bar Association and others. "SAVE" also describes Carter's problems with the Securities and Exchange Commission. Similarly, a letter to Chief Justice Edward F. Hennessey, Massachusetts Supreme Court, a copy of which petitioner submitted with its application for tax exemption, focuses on Carter's action against members of the Bar and purported acts of persecution against Carter. Also in support of its application, petitioner submitted a letter to the editor of a newspaper, dated June 20, 1978, again concentrating on Carter's problems with the Massachusetts courts. Two letters to the Massachusetts Securities Division likewise outline Carter's accusations of an ongoing conspiracy against him. John F. Carter (Carter) is petitioner's president and treasurer; Carolyn M. Carter is its clerk. Of the $ 1,446.02 contributed to petitioner for the period ending June 30, 1978, $ 1,321.02 was donated by Carter. The remaining $ 125 was donated by Edward W. Paine ($ 100) and by Joseph E. Russell ($ 25). Petitioner's bylaws reserve the right to solicit members although it has not *359 actually made such efforts. In fact, although petitioner has not formulated plans for financial support, it expects that most of its support will come from the private sector. Respondent's final ruling letter denied petitioner exempt status for the following reasons: The documents submitted in support of your application contain a one-sided exposition of Mr. John F. Carter's dealings with several agencies, associations and institutions. There is no evidence of any opportunity to present a viewpoint contrary to Mr. Carter's at any of the proposed forums and lectures. The attacks against these identified agencies, associations and institutions are not supported by a sufficiently full and fair exposition of the pertinent facts to permit the public to form opinions or judgments independent to those presented and, therefore, do not constitute instruction of the public within the meaning of section 501(c)(3) of the Code. Because these activities represent a substantial part of the organization's activities, the organization is neither organized nor operated exclusively for purposes described in section 501(c)(3) of the Code. Petitioner argues that respondent's agents (regulator/lawyers) *360 have unduly delayed its application for exemption because of its stated goals, have acted in bad faith, have misinterpreted its goals and the intent of Carter's personal copyrighted message, and have tried to contravene petitioner's First Amendment rights. Petitioner states that from its inception, it has been organized and operated exclusively for charitable and educational purposes. Respondent, by contrast, contends that petitioner is substantially operated to promote Carter's personal attack on certain organizations and institutions, that petitioner has not commenced any of its projected activities other than research and development, and that petitioner is operated substantially in furtherance of its founder's private interests and has not established that it is operated exclusively for any exempt purposes. Petitioner has the burden of proof to demonstrate that respondent's determination is wrong. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.
Section 501(a) provides an exemption *361 from Federal income taxation for organizations described in section 501(c). In order to be exempt under section 501(c)(3), an organization must be organized and operated exclusively for one or more purposes enumerated in that section. [4] Included among the exempt purposes are "charitable" and "educational" purposes. Educational purposes are defined as: (a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or (b) The instruction of the public on subjects useful to the individual and beneficial to the community. Sec. 1.501(c)(3)-1(d)(3), Income Tax Regs.
The operational test promulgated in the regulations requires than an organization's *362 activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. The issue of whether an organization has satisfied the operational test is a question of fact. Christian Stewardship Assistance v. Commissioner, 70 T.C. 1037, 1042 (1978). The purpose towards which an organization's activities are directed, moreover, and not the nature of the activities themselves, dictates whether an organization meets the operational test of section 501(c)(3). B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 356-357 (1978). A single nonexempt purpose, if substantial, will destroy an organization's exemption regardless of the number or importance of truly exempt purposes. Better Business Bureau v. United States, 326 U.S. 279, 283 (1945); First Libertarian Church v. Commissioner, 74 T.C. 396 (1980). An organization is not operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. *363 See Callaway Family Association v. Commissioner, 71 T.C. 340 (1978); Baltimore Health and Welfare Fund v. Commissioner, 69 T.C. 554 (1978). Therefore, an organization must establish that it is not operated for the benefit of private interests such as the creator of his family. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.
We find that a substantial purpose of petitioner is to advance Carter's personal attack on various agencies and institutions and to that extent petitioner serves a private, and not a public, interest. Most of the information in the administrative record repeatedly refers to Carter's purported persecution by these groups and his legal action against them. In Christian Manner International v. Commissioner, 71 T.C. 661 (1979), among other findings, we determined that the organization's true purpose was to to publish its founder's books and to provide him with a means for presenting his idesas on "the end of time" and thus that the organization served substantially to benefit the organization's founder personally rather than the general public. Alalogously, here, we find that *364 a substantial purpose of petitioner is to provide an outlet for Carter's personal attack on certain institutions. Petitioner's argument, moreover, that a denial of tax exemption would constitute a violation of its First Amendment rights is misguided. Exemption is a tax benefit which is a matter of legislative grace and not a constitutional right. General Conference of the Free Church v. Commissioner, 71 T.C. 920 (1979). While a denial of such a benefit to petitioner which is granted to others in the same class may amount to unconstitutional discrimination, we find that despite petitioner's allegations to the contrary, the administrative record shows that respondent acted impartially and in a nondiscriminatory manner in his refusal to grant petitioner tax exemption. See General Conference of the Free Church v. Commissioner, supra.
Petitioner, which fails the operational test of section 501(c)(3) is, therefore, not entitled to exemption under that provision. An appropriate decision will be entered. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. The prerequisites for declaratory judgment have been satisfied: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.↩
3. MASS. ANN. LAWS. ch. 180 (Michie/Law Co-op 1979) contains provisions for Massachusetts charitable corporations. Section 6 describes powers given them by the State. MASS. ANN. LAWS ch. 156B, Sec. 9 (Michie/Law Coop 1979) outlines general powers of certain business corporations. Sec. 9(m) specifically gives the power "to purchase, receive, take, or otherwise acquire, own, hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares * * *." Sec. 9(A)↩ allows a corporation to be a partner in any business enterprise the corporation would have the power to conduct by itself.
4. Although respondent's final ruling states that petitioner is not organized exclusively for one or more exempt purposes, he appears to have dropped this argument and to have centered his argument entirely on whether petitioner is operated exclusively for one or more exempt purposes. We will, therefore, restrict our inquiry to petitioner's operations.↩