PIUS XII ACADEMY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pius XII Academy, Inc. v. Commissioner
Docket No. 19842-80X.
United States Tax Court
T.C. Memo 1982-97; 1982 Tax Ct. Memo LEXIS 652; 43 T.C.M. (CCH) 634; T.C.M. (RIA) 82097; February 23, 1982. John F. Heath, for the petitioner. Howard Berger, for the respondent.
FORRESTER
MEMORANDUM OPINION FORRESTER, Judge: Respondent determined that petitioner does not quality for exemption from Federal income tax under section 501(c)(3). [1] Petitioner *653 challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. [2] The issues for decision are: (1) whether the administrative record contains sufficient information to establish that petitioner will be operated exclusively for educational purposes within the meaning of section 501(c)(3); and (2) whether the administrative record establishes that petitioner's activities within the foreseeable future will serve educational purposes. This case was submitted for decision on the administrative record under Rules [3] 122 and 217. [4] The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 489 (1977). *654 Petitioner's principal office was located in Columbus, Ohio, at the time the petition herein was filed. Petitioner is a corporation formed pursuant to the laws of the State of Ohio on August 30, 1979. According to its articles of incorporation, petitioner was established: A. To establish and maintain an institution of learning for primary and/or secondary education in a Christ-centered framework and atmosphere so that the pupil will be academically and spiritually prepared for his violation and chosen profession in life. B. To provide this education, so conforming with the minimum standards prescribed by the Ohio Superintendent of Public Instruction, as is consistent with the needs, methods and objectives of this institution. C. To provide instruction in Catholic faith and morals as succinctly expressed in the Apostles' Creed and in the teachings of the Catholic Church, with special emphasis on the teachings of Pope Pius XII. D. In furtherance thereof, to receive property of any description by gift, devise or bequest; to purchase, acquire, lease, hold, encumber, sell, exchange, and otherwise dispose of any property; to borrow money, with or without security and *655 to do all things of a similar nature. E. Members of this corporation shall be all persons who join together in establishing this institution. Each membershall be entitled to one vote in the election of the trustees or directors, the number of whom may be increased beyond three (3). F. This corporation is further empowered to assist financially or otherwise other institutions with similar purposes and non-profit status. At the time petitioner filed its application for recognition of exemption (Form 1023), it was not operational. In its application petitioner stated that while it had no fundrasing program, its expected sources of revenues would be from charitable bingo proceeds, parents' contributions, church contributions, third-party donations and other, as yet undetermined, fundrasing means. Its primary concern was to obtain a bingo license which, under Ohio law, is conditioned upon its being in existence for two years and upon having a determination letter from the IRS stating that the organization is exempt from Federal income tax, inter alia, under section 501(c)(3). [5]
*656 It was petitioner's "long-range plan" to form a "traditional Catholic School" for the education of children below the college level. As of November 21, 1979, petitioner had no students, faculty, facilities or state school charter. Additionally, it had no assets and no liabilities. On or about December 3, 1979, respondent returned petitioner's application as incomplete. He requested petitioner to send by December 29, 1979, pamphlets, brochures and other literature about petitioner's organization, a proposed budget, and certain information regarding petitioner's nondiscriminatory policies. Petitioner promptly responded that it had no pamphlets, brochures or budget and stated that it would conduct its operations in a nondiscriminatory manner. Petitioner concluded with the following statement: Basically, we need funds from charitable Bingo in order to advance toward operating capacity; yet under present Ohio law (not yet judicially tested) we cannot apply for a Bingo license, until we have received a federal letter allowing recognition of Exemption. This is our dilemma. While considering petitioner's application, respondent requested further information from petitioner on *657 February 5, 1980, including, inter alia, a proposed curriculum and courses to be offered, a proposed budget for the first two taxable years, the date petitioner expected to open its school, the location of the school, the number of grades to be taught, the number of students and faculty, the amount of tuition to be charged, and other information concerning the conduct and location of bingo games. Respondent gave petitioner 21 days to respond. Petitioner responded on February 18, 1980, inter alia, that its courses offered would be somewhat similar to those offered in Ohio public schools, but that it was not yet sufficiently organized to produce curriculum guidelines. It also stated that it could not yet prepare a proposed budget for its first two taxable years. It hoped its school would open in August 1981, but mentioned nothing of the number of students and faculty expected, and specified the location of the school only as "somewhere in Franklin County, Ohio." Petitioner did adequately respond to most of respondent's other requests for information, given the fact that it had not yet begun operations. Respondent ruled adversely upon petitioner's application on April 22, 1980, on *658 the basis that petitioner failed to describe its proposed operations in sufficient detail to allow respondent to determine that petitioner will be operated, if at all, exclusively for exempt purposes. After petitioner's protest, that adverse ruling was made final on july 31, 1980. Sections 501(a) and 501(c)(3) provide an exemption from Federal income tax for an organization devoted to education if three requirements are met: (1) the organization must be organized and operated exclusively for education alone or in conjunction with other exempt purposes; (2) no part of its net earnings may inure to the benefit of any private person; and (3) it must not devote a substantial part of its activities to political or lobbying activities. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 491 (1977). In the instant matter, respondent determined that the first of these requirements was violated. If an organization fails to meet either the organizational test or the operational *659 test, it is not exempt for purposes of section 501(a). Gen. Conf. of the Free Church v. Commissioner,71 T.C. 920, 926 (1979), Hancock Academy of Savannah, Inc. v. Commissioner,supra at 492; sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Furthermore, the burden of proof is on petitioner to overcome the grounds set forth in respondent's notice of determination. Hancock Academy of Savannah, Inc. v. Commissioner,supra; Rule 217(c)(2)(i). The central issue posed in this proceeding is whether petitioner is or will be operated exclusively for educational or other exempt purposes. Under the so-called "operational test," an organization is "operated exclusively" for exempt purposes if it is engaged primarily in activities which accomplish one or more of the purposes described in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs; Dumaine Farms v. Commissioner,73 T.C. 650 (1980); Gen. Conf. of the Free Church v. Commissioner,supra. *660 As of the time the petition was filed herein, petitioner had not yet conducted any activities. While it is clear that an organization need not be in actual operation before it can seek exemption from tax, it must describe proposed operations in sufficient detail to permit the conclusion that the organization will meet the necessary requirements for exemption. Dumaine Farms v. Commissioner,supra.Failure to provide respondent with requested information, if relevant to his determination, may be grounds for denial of exemption. See Gen. Conf. of the Free Church v. Commissioner,supra.Respondent maintains that petitioner has failed the operational test due to the latter's failure to supply requested information needed to permit such a conclusion. Furthermore, respondent alleges that petitioner has not shown that the prospect of its operating a school within the foreseeable future is likely. Petitioner's arguments reflect a misconception of respondent's position. Petitioner believes that respondent has denied its exemption because it is *661 not operational. In fact, respondent has taken no such position. He merely contends that petitioner has failed to supply such information as would enable a conclusion that when operational, if ever, petitioner will conduct all of its activities in a manner which will accomplish its exempt purposes. We agree with respondent. Throughout its application and supporting documents, petitioner recites only vauge generalizations of the type of operations it had planned. So vague, in fact, that petitioner has no real plan, but merely a concept or idea that at some point in the future it would, if economically feasible, operate a school. Aside from planned bingo games, petitioner had no fund-raising program. Additionally, it had not planned a curriculum, had no idea how many students would be in attendance or how many faculty would be needed, it could not predict how much money would be needed to start the school, or to operate it once it had begun, it did not know where in Franklin County, Ohio, the school would be located, nor what grades taught. All in all, the inability of petitioner to even predict the answers to these questions indicates that it had no plan to operate a school *662 in the foreseeable future. Petitioner was not without some definite plans, however. It was certain that it would challenge the Ohio law requiring a two-year waiting period before an exempt organization could obtain a bingo license. Once a bingo license was obtained petitioner knew precisely how it would conduct the games, i.e. it would rent equipment, lease a hall, and employ 15 volunteers. It expected 300 people per night once a week, prizes not to exceed $ 3,500 per night, and profit of approximately $ 1,500 per week. The administrative record clearly shows that respondent's denial of petitioner's requested tax exemption was reasonable. Petitioner's plans regarding the accumulation of income without more than a mere scintilla of an idea regarding the uses therefor provides respondent with no way to conclude that petitioner's proposed operations (the school) will ever come to fruition and, if they do, whether they will accomplish only exempt purposes. We have no reason to believe that petitioner has other than the best intentions to operate a school of some type at some point in the future. Our holding in favor of the respondent herein merely reflects our inability, on *663 the administrative record, to so conclude. Furthermore, our holding does not preclude petitioner from filing a new application with respondent that includes all of the appropriate information necessary for a favorable determination. Houston Lawyer Referral Service, Inc. v. Commissioner,69 T.C. 570 (1978). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. ↩
2. There is no dispute that petitioner has astisfied the prerequisites for this declaratory judgment. See sections 7428(b)(1), (2) and (3). Rule 210(c), Tax Court Rules of Practice and Procedure.↩
3. All references to the "Rules" refer to the Tax Court Rules of Practice and Procedure. ↩
4. Counsel for petitioner refused to stipulate to the administrative record herein. Consequently, pursuant to Rule 217(b), respondent has certified the record as genuine and complete.↩
5. Petitioner also stated that after obtaining an exemption from tax it intended to challenge the Ohio two-year waiting period on Federal constitutional grounds.↩