SENIOR CITIZENS OF MISSOURI, INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Senior Citizens of Missouri, Inc. v. Commissioner
Docket No. 3090-87X.
United States Tax Court
T.C. Memo 1988-493; 1988 Tax Ct. Memo LEXIS 517; 56 T.C.M. (CCH) 480; T.C.M. (RIA) 88493; October 12, 1988; As amended October 17, 1988 Earl S. Dean (an officer), for the petitioner. *
William Mille and George J. Blaine, for the respondent. POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge:[1] Respondent determined that Senior Citizens of Missouri, Inc. (petitioner) did not qualify as an exempt organization under section 501(c)(3). [2] Petitioner then brought a declatory judgment proceeding pursuant to section 7428. The sole issue for decision is whether petitioner operated exclusively for an exempt purpose within the meaning of section 501(c)(3). *519 This case was submitted on the stipulated record pursuant to Rules 122 and 217(b). [3] The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. The pertinent facts are summarized below. Petitioner's registered office was in St. Louis, Missouri at the time it filed its petition. Petitioner was incorporated under the provisions of the General Not For Profit Corporation Law of the State of Missouri on August 3, 1984. Petitioner's articles of incorporation state that its purpose is "To raise funds for and distribute funds, goods and or services to handicapped adults *520 and all other legal powers permitted general not for profit corporations." Petitioners solicited contributions solely through telephone solicitors ("solicitors"), who were independent contractors. For petitioner's taxable year ending July 31, 1985, [4] solicitors raised $ 40,596.56 in contributions, which constituted petitioner's total revenues for the year. The average donation was $ 19, and no donor contributed more than two percent of petitioner's total receipts. Petitioner received no grants, gifts or donations other than the contributions generated by the solicitors. Petitioner paid the following amounts to its solicitors during its taxable year ending July 31, 1985: Name
Amount
Kathy Murray
$  5,279.81
Karl Sterling
13,627.33
Mary Green
19.34
Donald Murray
1,157.74
Betty Smith
11.13
Dee Corell
3,357.94
Brenda Roberts
190.02
Total
$ 23,643.31
None of the solicitors are related to petitioner's president, Earl S. Dean. None of the solicitors were paid by the hour, and petitioner did not maintain a record of the *521 hours worked by the solicitors. Petitioner has no written employment contract or agreement with the solicitors. All solicitors were paid a 25-percent commission on contributions raised, resulting in total commissions paid of $ 10,149.17. In addition to paying commissions, petitioner paid "advances" to some solicitors totaling $ 13,494, or 33.2 percent of petitioner's gross income. The "advances" purportedly were made against the solicitors's commissions, but some solicitors resigned before they earned commissions equal to or exceeding their advances. Petitioner was not reimbursed for the unearned advances. The record is barren of facts establishing how much, if any, of the "advances" were repaid; we must assume, therefore, that none of the $ 13,494 was repaid. Each solicitors who received amounts in excess of $ 600 during petitioner's 1985 taxable year was furnished a Form 1099 showing his or her total compensation, including advances. Including the payments to the solicitors, petitioner used its revenue in the following manner: Percent of
Type of Expense
Amount
Petitioner's Gross Income
Advances to
$ 13,494.14
33.2%
solicitors
Commissions to
10,149.17
25  %
solicitors
Compensation to
7,136.00
17.5%
Earl S. Dean,
petitioner's founder,
president and
director
Dinners, picnics
3,620.00
8.9%
and transportation
for the elderly
Other expenses, [5]
5,232.21
12.9%
including office
supplies, rent and
telephone charges
Cash retained
965.04
2.4%
Total expenses and
$ 40,596.56
100.0%
cash retained
*522 On or about October 29, 1985, petitioner filed with respondent Form 1023, Application for Recognition of Exemption Under Section 501(c)(3). By letter dated April 4, 1986, respondent notified petitioner of the reasons for the proposed denial of its exempt status. After obtaining an extension, petitioner filed a timely written protest on May 4, 1986, with the Appeals Office setting forth its arguments for exempt status. On November 6, 1986, respondent issued a final adverse determination letter to petitioner denying petitioner's application for exempt status as an organization described in section 501(c)(3). Respondent's adverse determination letter provided the following reasons for denying petitioner tax-exempt status: The organization has failed to describe the activities in which it expects to engage, including the standards, criteria, procedures, or other means adopted or planned for carrying on the activities; the anticipated sources of receipts; and the nature of contemplated expenditures. You have failed to establish that you are operated exclusively for charitable purposes *523 or for any other exempt purpose described in section 501(c)(3) of the Internal Revenue Code. You have not engaged in charitable activity commensurate with your resources. In addition, you have served private rather than public purposes. The financial information you provided shows expenditures for salaries and commissions that are not ordinary and necessary, which expenditures were determined, on the basis of available information to constitute inurement.
After exhausting its administrative remedies within the meaning of section 7428(b)(2), petitioner timely filed a petition with this Court seeking a declaratory judgment pursuant to section 7428(a). Petitioner contends that (1) it has operated exclusively for charitable purposes within the meaning of section 501(c)(3), and (2) it has not operated for a substantial private interest. OPINION Both parties focus on the payments made to the solicitors. Petitioner aggregates the commissions and advances paid the solicitors, and contends that such total payments were reasonable. In contrast, respondent focuses solely on the advances, and argues that such advances were neither reasonable nor for services *524 rendered. Petitioner computed the commissions based on a percent of revenues raised, but apparently determined the advances based on separate criteria. As a result, we find that the commissions were in fact separate and distinct from the advances, and therefore limit our inquiry to the advances. Section 501(a) provides that organizations described in section 501(c) shall be exempt from taxation. Section 501(c)(3) includes "Corporations * * * organized and operated exclusively for * * * charitable * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *." The regulations further provide that in order to be classified as an exempt organization under section 501(c)(3), the organization must be both organized and operated exclusively for one or more exempt purposes. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent does not allege that petitioner failed the organizational test. Additionally, we recognize that petitioner's stated purpose of aiding handicapped and elderly *525 citizens qualifies as an exempt purpose. See sec. 1.501(c)(3)-1(a)(2), Income Tax Regs. Thus, the sole issue is whether petitioner operated exclusively for an exempt purpose. Section 1.501(c)(3)-1(c)(1), Income Tax Regs., describes the operational test as follows: (c) Operational test. (1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Although section 501(c)(3) and the regulations thereunder use the term "operated exclusively," an organization will be regarded as satisfying the operational test if it engages primarily in activities which accomplish one or more exempt purposes. World Family Corp. v. Commissioner,81 T.C. 958, 963 (1983). *526 However, "the presence of a single * * * [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number of importance of truly * * * [exempt] purposes." Better Business Bureau v. United States,326 U.S. 279, 283 (1945). Conversely, an organization engaging in nonexempt activities can obtain exempt status so long as such activities are only incidental and less than substantial. Church in Boston v. Commissioner,71 T.C. 102, 107 (1978). The payment of reasonable compensation may qualify as one such incidental nonexempt activity. However, in additional to being reasonable in amount, the compensation also must be incurred for services performed. See World Family Corp. v. Commissioner, supra at 968. This requirement is consistent with other sections of the Code. For example, section 162 allows a deduction for ordinary and necessary expenses, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." (Emphasis supplied.) Also, section 1.162-7(a), Income Tax Regs. *527 , provides: (a) There may be included among the ordinary and necessary expenses paid or incurred in carrying on any trade or business a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.I [Emphasis supplied.] Here, petitioner has not established that the advances were paid for services performed by the solicitors. In contrast to the commissions, petitioner has failed to explain in sufficient detail the criteria and method used to determine the amount of the advances paid to each solicitors. Furthermore, the administrative record lacks complete information regarding the total advances received by each solicitors, the amount of each solicitors's unpaid advances and the reason that the advances were not repaid. Maintaining adequate records and developing criteria for the disbursement of funds, for both exempt and nonexempt purposes, may appear onerous to a fledgling organization such as petitioner. Compliance with these recordkeeping requirements, however, is necessary to safeguard against *528 the potential abuse of the organizations's funds. See Church in Boston v. Commissioner, supra.
In conclusion, we find that petitioner has failed to establish the necessary correlation between the advances paid to the solicitors and any corresponding services performed by the solicitors. We, therefore, are unable to conclude that these unexplained advances furthered any exempt purpose. [6]
*529 Having found that the advances did not further an exempt purpose, the remaining issue, for purposes of the operational test, is whether the advances comprised an insubstantial part of petitioner's activities. Neither the Code nor regulations define "insubstantial" for purposes of section 501(c)(3); this is a question of fact to be decided in light of all relevant facts and circumstances. World Family Corp. v. Commissioner, supra at 967. Petitioner paid unexplained advances representing 33.2 percent of its gross revenues. We find this to be clearly substantial, especially when considering that petitioner spent only 8.9 percent of gross revenues on dinners, picnics and other activities for the elderly. Accordingly, we find that petitioner failed to satisfy the operational test of section 501(c)(3). Our holding effectively disposes of petitioner's remaining arguments. In sum, we assume that petitioner operated with philanthropic intentions. However, this alone does not guarantee the receipt of tax-exempt status under section 501(c)(3). There are many requirements that *530 must be met, some of which may be elusive to the average layman. Despite petitioner's director's alleged lack of sophistication in the procedures of the Internal Revenue Code, petitioner bears the burden of proving that based on the administrative record respondent's denial of tax-exempt status is incorrect. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977); Rule 217(c)(2)(i). Petitioner has failed to meet this burden. Accordingly, An appropriate order will be entered.
Footnotes
*. Brief amicus curiae was filed by Leonard J. Henzke, Esq.↩
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
3. Because of the possible ambiguity of certain questions posed by respondent during the administrative proceeding, we allowed petitioner the opportunity to submit certain additional information, subject to respondent's verification. Respondent was unable to substantiate the accuracy of petitioner's supplemental information, and therefore would not stipulate to petitioner's alleged facts. Because this additional information remains unsubstantiated, we base our decision solely on the information contained in the administrative record. ↩
4. Unless otherwise noted, all references are to petitioner's taxable year ending July 31, 1985. ↩
5. Petitioner did not spend any funds on advertising brochures or newspaper articles. ↩
6. Having found that the advances were not for services rendered, we need not decide whether the advances were reasonable in amount. We do, however, feel compelled to address petitioner's argument that any payments made to outside independent contractors are not subject to reasonable compensation standards. Clearly an organization cannot avoid the reasonable compensation requirement by classifying its workers as independent contractors rather than employees. We decline to adopt petitioner's broad rule that is fraught with potential abuse. Rather, we consider that the nature of the payee is one factor to consider in determining whether the amount of the payment is reasonable. This is consistent with World Family Corp. v. Commissioner,81 T.C. 958, 969 (1983), where this Court stated: We must consider then whether a commission which may be reasonable when paid to an unrelated third party↩ becomes unreasonable when paid to an individual having a personal and private interest in the payor organization * * *. [Emphasis supplied.]